The issue that I'll begin with is whether a conviction for violating a South Carolina drug statute that sets forth multiple crimes, some of which fall within the scope of the definition of a controlled substance offense under the guidelines, and some of which do not, was properly characterized as a career offender predicate conviction where the loan valid shepherd document fails to narrow the conviction to one of those crimes that would fall within the definition of controlled substance offense. Mr. Boyd was convicted of a drug count under section 841 B1C and a second count of 18 U.S.C. section 924 C. At sentencing, the district court held that Mr. Boyd fell within the scope of the career offender guideline based on two convictions. A 2006 conviction when he was 18 years old of five counts of assault with intent to kill, AWIK, a South Carolina common law offense. In addition to that one, the court found that a 2013 state drug conviction, a violation of South Carolina code 4453 370 B2, also was a career offender predicate. And this first issue deals with that drug conviction. That career offender enhancement at sentencing increased Mr. Boyd's sentence essentially by three. His bottom of the guideline would have been 90 months. It was increased to 262 months, an increase of 14 years. The first issue presented in this appeal is directed to that drug conviction. The court held that 4453 370 sets forth multiple crimes, some of which fall within, some of which fall without. For example, referring to the statute of conviction, it contains language directed to distribution and possession with intent to distribute, but it also contains language directed to purchasing. Yes, Your I agree all what you're saying is important, so I'm not trying to fault you for your arguments, but you said one valid shepherd document. Well, first of all, just what document are you talking about? Just so we're on the same page. The one valid check separate document, Your Honor, is the sentencing sheet, and I'm happy to discuss what is found on that sentencing sheet. Okay, so you don't think the, I want to go back to the indictment. I understand the indictment may not be dispositive, but is your argument that the indictment isn't valid because it refers to second offense? That's exactly right, Your Honor, and that's particularly the case when you have a statute like this that contains multiple crimes within the statutory section. That makes it even more difficult to discern specifically what crime is the second offense of, Your Honor. Well, first of all, so does, that kind of was my point. I mean, it seems to me the issue with the indictment, you know, the second offense reference makes it perhaps confusing, and we look to some of our decisions, McLeod and Williams, about those. But there, the difference in the indictment and what the sentence was, was a difference that mattered significantly. And here, I don't think first or second offense really makes a difference. What makes a difference is whether it's the type of offense within the statute that requires an overt act or not. And so I guess my point is I get that the indictment doesn't do that because in the body of it, it contains both types of descriptions. But I may be talking academically, but it seems to me the indictment isn't ineffective. It just may not be conclusive. So then you go to the sentencing sheet. And how does the sentencing sheet with the language under after two colon not, you know, provide the indication of what type of offense we're talking about? Your Honor, that section, as taught by the South Carolina judiciary, is a shorthand administrative summary of the statute. It is designed to include all of the potential crimes under that statute. Of course, it can't include all of them. It tries to do that. There are other CDR code sections like this, including But it doesn't. It doesn't include all of them. It doesn't say conspiracy or attempt or any of the problematic sections. The only things it mentions are things that would clearly be a controlled substance offense. And your client and the attorneys signed right underneath that, saying, yes, this is what he pleaded to. It was manufacturing or possession with intent to distribute. Well, certainly there are many sections of this true field that are inconsistent with the indictment that Judge Paul Obama is referring to. So that raises initially a question of how reliable is this particular section, this true field. If you turn to what the South Carolina judiciary says about the CDR codes, it is very clear that this is intended to be a stand in for the entire statute. There is no other CDR code for purchasing, for example, or for conspiracy. People write it in. We've had other cases with these South Carolina sheets. And if it's, you know, they hand write, you know, conspiracy or whatever it is on this line. But your client pled guilty to exactly what's written on the line. So they didn't need to substitute it with something handwritten. I understand that what's on that line includes every drug possible. But what matters for our question here is just, you know, does it qualify as a controlled substance offense? And it does because it's possession with intent to distribute. Well, Your Honor, we would submit that what's in that true field is not exactly what he pled to. Because if it was what he pled to, then it would have one of the crimes that is set forth. But does it matter for our purposes? We don't need to know exactly what it was. We need to know that it qualifies. Well, I guess my point is, Your Honor, and our point is that this administrative shorthand does not make clear, notwithstanding what's included in it, it does not make clear that purchasing and conspiracy are not included when this CDR code is used. When CDR code 0187 is used, regardless of what the person is convicted of under that statutory section, you're going to get that CDR code with those exact characters in it and those exact. So we can never rely. We can never rely on the code description. It always has to be handwritten for us to be able to rely on it in any case. Certainly not. There are many statutory sections that set forth one crime. And so it will be clear that if they're convicted under that statutory section, then it's apparent what the crime is. But for controlled substances, for this one, which covers a whole lot of what's going to come before us when it comes to controlled substances, I think what's written here is exactly what they pled to because it also happens to match the CDR code. Your Honor, in the rare circumstances where the entirety of the CDR code is put there, sometimes there's something typed in and it's very clear, distribution of cocaine base, for example, or something is handwritten in sometimes. But in this particular case, the entire CDR code is used. This is exactly the same as in the furlough case. The furlough case also before this court had also a generic CDR description of the offense. And the district court said there's no way to tell what specific crime he's been committed of, Mr. Furlow. And so the court stayed the sentencing, continued the sentencing hearing and allowed the government to go get a transcript of the sentencing hearing in state court. And that made clear that Mr. Furlow had been convicted of distribution of cocaine base. Without that, it was unclear based on this. But you were getting at a question I wanted to ask. And it's sort of piggybacking on Judge Rushing's question about just kind of the practicalities of this, because South Carolina does have this one section and the giant run on sentence that covers basically all drug offenses. So this is an issue. And I am wondering, and I will ask your colleague this too, if you have any sense for in how many cases, how big a problem this is, in how many cases we have only the generic code language here, and it does appear to match up, you know, identically to the generic definitional language. We have only that the defendant didn't plead as indicted, in which case you could look at the indictment and there's no plea agreement and there's no plea colloquy. I mean, is this a large, are we going to be, if we adopt your reasoning that this generic language really tells us nothing, are we going to be stuck with a lot of, do you have a feel for, is that going to be a lot of cases? Is it going to be just a few cases? What are we talking about? It's not many cases at all. And in fact, the other cases that have come before this court have had one of those other Shepard documents, transcript or whatever that did make it clear. In those cases, of course, whether the statute was divisible was an issue that has been decided by this court. So it is not something that is going to come up, in my experience, very frequently. It is a unique set of circumstances in this case that result in the impossibility of determining exactly what Mr. Boyd was convicted of in this case. Go ahead, Judge. I'm sorry, one thing, I didn't think your brief address, but if you know the answer, when we're doing this modified categorical approach and we're looking at potential Shepard evidence, how clear does the evidence have to be before we can say, yes, we know what this person pled guilty to? What's our standard here? Well, it's certainly the government's burden to prove by a preponderance of the evidence that the person was convicted of something that is categorically a controlled substance offense or a crime of violence. And in this instance, we submit, it's just you're not able to tell based on this sentencing sheet. And we can't resort to, we submit, looking at any other Shepard documents, because they're not valid based on this court's holding in McLeod. And you know, in McLeod, the two, what was originally charged and what Mr. McLeod pled to were very closely related, two burglary sections very closely related. And the government in that case argued, look at the daggum indictment, it says clearly that Mr. McLeod went into a building, and that would have decided the issue before the court in that. And yes, Judge Paul. And I just want to get real quickly with the arrest warrant. I know that the district court, that was, I think that was in the PCR, the district court, I don't think talked about it. And maybe, maybe it's a little academic there. I'm familiar with our cases that talk about the affidavit language and what it says about that. So I don't want to talk about that. But on the left side of it, it, you know, there's an offense listed. And, you know, maybe that is your argument for that. Because because we do say in I think Prudencio, that there's an indication you can use an arrest warrant, then we got other cases that say, say you can't use an affidavit. But this is not an affidavit. Is your argument on that the same thing as the language by following two in the sentence code? Or is it something else? No, Your Honor, as I interpret this court's law about the use of affidavits or warrants for that sort of thing is that it has to be incorporated expressly into the indictment in order to be a legitimate Shepherd document and reliable, reliable court. I'm fine. But let's assume we can consider it. I mean, does the language next to offense in the arrest warrant, which isn't part of the affidavit, does that does that clarify what you're in any way help inform what we're talking about? Your Honor, if it was a Shepherd document in this case, then certainly it could be considered. But I know that that sort of question, perhaps. But I just this this does leave me. And this is just like a very kind of basic thing that I must be missing. I don't understand. Even if we knew exactly what he was arrested for, how would that tell us what he was convicted of or what he pled guilty to? I don't I don't think it necessarily would. I mean, what he was charged with. Necessarily, like we can't assume that everyone who's arrested for one thing ends up convicted of or pleads guilty to that. I just. Sir, what we're doing, Shepherd, like the point is we're looking for evidence of exactly what are the elements to which this person pled guilty or was convicted. And I'm just not understanding how it's even sort of relevant evidence, what they were arrested for. But I may be missing something very fundamental. And I think that I may have been grafting the legitimacy of calling it a Shepherd document is therefore it's reliable. And that's a mistake, because as you point out, it is not necessarily something that is reliable because of that difference between what people are charged with and what they may be. So I am changing. I am if you're if you're wondering if I'm changing my answer to Judge Pahlabom's last question, I am changing my answer to that question for the very reason that you pointed out, Judge Harris. I know that I'm just about out of time, so I hope to address the other issue in this case in rebuttal. Thank you. Any other questions, then I'll reserve the remainder of the time. Ms. Washington. Good afternoon. My name is Lisa Washington. I am representing the United States in this matter. I'll just get right to the last argument that Mr. Boyd made in terms of the Shepherd documents available for the court's review in determining whether or not his predicate drug conviction qualified as a controlled substance offense. The government disagrees that the sentencing sheet is the only Shepherd approved document available for the court's review. This case does not present the same factual scenario as that of the Shepherd. So this is about the using the indictment? Yes, Your Honor. All right. So I have sort of the same question I did about arrest warrants. Like if you just just if you can just explain to me kind of at like the common sense level right under Shepherd, what we need and it actually I will answer the question I asked your colleague. It has to be certain. Shepherd uses the word three different times necessary certainty. We have to be certain of what this person pled guilty to. And I guess I am just not understanding why an indictment if we know he didn't plead guilty to the offense as charged in this indictment, like the one thing we know is he did not apply. He did not plead guilty to a second offense of anything. So once we know that, I don't understand what evidentiary value this piece of paper has. We know this wasn't the basis for his plea. So who cares what else is on the piece of paper? Do you know what I'm saying? Like, how does this help us to figure out? All we know is that he applied. Unless you're relying on the sentencing sheet, but you're saying we don't have to rely on it. We can just use the indictment. I'm sorry, Your Honor. Oh, no, you're not saying that. You're saying we need both. Correct, Your Honor. I'm saying the court was correct in relying on both the sentencing sheet and the indictment. Well, in your brief, you said the court, hang on, in your brief, you said the court only relied on one and that you were not conceding the indictment, but the district court didn't rely on it. So you wouldn't address it. And then two days before argument, you submitted a 28-J letter changing your mind and introducing a new argument, all of which is fine with me, except it does seem odd to me that you're doing that in a case where you're saying the defendant abandoned an argument that he introduced only by way of a 28-J argument. Yes, Your Honor, I understand completely. The basis for the government's initial argument was basically tracking the language that the district court used in reaching its ultimate determination as to what the conviction was for. I'm happy to consider your 28. I am totally happy to consider your late-breaking argument. I just hope we will do this in an even-handed way. Absolutely, Judge. The district court made clear at the sentencing hearing that it was specifically relying on the sentencing sheet, but that it had considered the indictment, and the government believes that it was correct in doing so. This is not a McLeod or a Williams situation. This defendant, under State v. Scriven and State v. Burton, pled guilty to the lesser included offense of possession with intent to distribute marijuana when he pled guilty to the first offense. So it's not a different offense. That does not render this defendant's indictment irrelevant for sentencing purposes. But so long as we can tell from the sentencing sheet what he pled guilty to. But your argument presumes the elements of the offense and the indictment are the same as the elements of the offense to which he pled guilty, and we know what that offense is from the sentencing sheet. Correct, Your Honor. We know what that is from the sentencing sheet. I'm sorry. So unless the sentencing sheet makes clear what he pled guilty to, then we really can't use the indictment. If we think under the sentencing sheet maybe he pled guilty to a first offense of conspiracy or purchase, then we can't really use the indictment anymore. Your Honor, I think a combination of both documents can be used by the court in determining by a preponderance of the indictment. And the two line beneath it says, or just above the two line says, in disposition of said indictment comes down the defendant who was pleading guilty to this drug offense. At the very end of that line, there's the WID-1st offense, which was critical to the district court's determination that this defendant pled guilty to the lesser included offense of possession with WID-1st offense. I don't think that the sentencing sheet is completely, is unlinked to the indictment, especially in this case where the statutory language is the same, the CDR code section is the same, the statutory code section is the same. And while this document in and of itself does not, I'm sorry. The CDR codes are different. When the sentencing sheet refers to the indictment, it uses CDR code 0187. And when it refers to the actual offense of conviction, it uses CDR code 0186. So, okay. So those are, so according to this sentencing sheet anyway, the codes are not the same for the two offenses. The codes are not the same, but they're consistent with the offenses. 187 is consistent with a conviction for PWID-1st, or second, I'm sorry, which is what the defendant was charged with in the indictment. And 186 is consistent with the code, with the offense for PWID-1st, which is what the defendant pled to. And Your Honor, that was discussed during the sentencing hearing. I believe the defendant conceded at the hearing that those offenses, and he's done so in his brief as well. Counsel, can I? No, no, go ahead. I wanted to ask you about, in your brief, you talk about a case from the Fifth Circuit, which somehow also encountered a South Carolina sentencing sheet like this. And the same argument was made that it's just a statutory identifier, that it's shorthand. And the Fifth Circuit rejected that argument and said, we can tell from what's on the sheet, what was, you know, what he pled guilty to, and everyone signed underneath it. So we know that it, you know, sufficiently particular and not just a general category. What's the implication of that for our analysis? Obviously, the Fifth Circuit doesn't bind us. But I'm a little wary of disagreeing with another circuit on this, but maybe I shouldn't be. Well, Your Honor, I would point the court to United States v. Kershaw. It's an unpublished decision of this court, confronted with the same set of facts. Actually, the exact description that's contained on Mr. Boyd's sentencing sheet was at issue in Kershaw. In that case, this court concluded that the district court did not err in relying on Kershaw's sentencing sheet, which identified the offense by name, the conviction by name, the statutory code section, and the consistent CDR with each respective offense, the offense charged and the offense to which the defendant, Mr. Kershaw, pled. This court affirmed the district court's determination that Mr. Kershaw, based on those factors, had been convicted of a predicate-controlled substance offense. So to the extent that the court is concerned about whether or not these sentencing sheets are reliable, and granted, Your Honors, we've had a time dealing with them also. And I would recommend, I would rely on Judge Gregory's description of sentencing sheets, particularly it was a South Carolina case. The observation he made in United States v. Young is that while they're not perfect, error here and there does not render the entire document unreliable. It's not fatal in terms of determining what the offense of conviction was. It's just a casualty of what we often call the hurried and yes, Judge Harris. Counsel, so I do want to give you a chance to respond to what I take really to be the thrust of your colleague's argument. And it's not really addressed in the brief, which is that this is not the case where there's a mistake. It's just that this particular sentencing sheet just doesn't really tell us anything because the only thing that might tell us something is because he's not, he didn't check that he's pleading as indicted or to a lesser included offense. So we can't just look at the indictment. And so we have to look at the language after the two line and that that language is just of CDR code 186. And so I want to give the government a chance to, and that it would be unusual language to pick if you were trying to describe his offense because it refers to manufacture. It refers to a bunch of drugs that obviously weren't at issue. So this obviously wasn't something someone typed in specially for him because he wouldn't pick this language. So I mean, I really want to give the government a chance. Like it could be that there is a well understood practice that you don't use this generic language unless the offense actually did involve say either manufacturing or possession with intent to distribute. That they are careful only to use that language when it matches up with the actual case. And that in other cases, they will write something in, but I didn't see anything like that in your brief. And so can you tell me if there's something I'm missing, if there's some reason to think that this is more than just a generic, like we didn't know what it was. So we just typed in literally word for words, like bizarrely placed comma for bizarrely placed comma, the generic definition. Well, your honor, I don't think I'm comfortable saying that this is a practice of the state courts in Richland County nor in South Carolina. I will say, though, that the exact description as type written into Mr. Boyd's sentencing sheet was the description at issue in the Kershaw case. I also, your honor, would add that I don't know that I necessarily agree that there was not, this doesn't fall into the category of an error. Now, if you look at the indictment at JA191, there's a form. It looks like a pre-printed stamp form where a defendant who waives presentment of an indictment to a grand jury is to sign and witness. That is completely blank in Mr. Boyd's case. On the sentencing sheet, the only indication that he waived presentment to a grand jury is the X box marked next to those words. There's also a line for his initials. That is left blank, which leads me to believe that the box marked X was an error. What the clerk should have checked X was lesser included offense. There is no indication that this defendant or Mr. Boyd pled guilty to or waive presentment of an indictment other than this trace X marked on the sentencing sheet. What the other evidence does show, and it's not conclusive admittedly, but it does show that the defendant pled guilty to a lesser included offense. Your honor, this case presents the same factual scenario as that. I hate to keep going back to it, but it does present the same factors present in the Kershaw case. It's not conclusive, but the standard, your honor, is not beyond a reasonable doubt. It's by a preponderance of the evidence. The district court was- Shepherd says it's certainty. Shepherd says necessary certainty. Because what we're doing when we do the modified categorical approaches, we're substituting for the certainty we would normally get from a conviction. That's really good. You're convicted of a statute and the elements are a perfect match. We know 100% what happened. This is supposed to be a substitute for that. The court was really careful in Shepherd to say, no kidding around. It has to be certain like that is certain. And I just feel like at some point, I mean, what do I know? I am inclined to agree with you. The most natural inference from this paper trail is probably he was charged with PWID second offense and he pled to PWID first offense. I think that is the most natural inference if you put all the paperwork together. But then you're going to have some weird stuff like boxes that were checked wrong. The sentencing sheet doesn't quite say that. I just, I feel like at some point we're getting a little bit far afield from where we were supposed to be with the modified categorical approach. And I also feel like this is not a huge burden in that in most cases, like once we're down to sentencing sheets, like this is already a hard case. We're supposed to have ideally a plea agreement, a colloquy. This stuff, at least in my limited experience, is usually way clearer. We're already kind of pushing our luck a little bit because nobody expects old state records to be perfect. But here we are and I'm sorry, this isn't really a question. It's a concern. Maybe I'll just let you address it. Your Honor, trust me. I think my office understands the court's concern. I think this was raised in the Williams case. We are fortunate in that we have in our offices throughout the district, special assistant U.S. attorneys who are employed by local, state and local prosecutor's offices. They have firsthand experienced the difficulty that arises sometimes when we are confronted with Shepard documents and indictment or sentencing sheets and indictments that are present here in the Boyd case. The problem is that once it makes it to federal court and we're dealing with it at this level, it's kind of too late. We're always behind. Hopefully, given the communications between federal law enforcement and U.S. prosecutors and state prosecutors, we can at some point help lessen the incidences that lead to conversations or discussions like this or appeals like this. Given the fact that local and state prosecutors understand now the significance or the importance these documents play at federal sentencing, I think that we can expect that the sentencing sheets or that they will realize and communicate to their colleagues on the state level the importance of getting it right. Because that's what we all want to do. But at the same time, we recognize where we are at this particular stage. And I would invite the court to consider the factors present in Kershaw and factors present in Young. These documents are not perfect, but considering the documents as a whole and the government stands by its position that the sentencing sheet in combination with the indictment establishes by preponderance of the evidence that Mr. Boyd was convicted of PWID first offense in violation of the South Carolina Code and that offense is a controlled substance offense under 4B1.2. Unless there are any other questions about the first issue raised by Mr. Boyd, the government would move forward to the Borden issue. So I'd like to ask a question on that, counsel, because you don't have a whole lot of time left. Assume we don't find the defendant has abandoned the Borden issue and you're at the merits. What's your position on whether assault with intent to kill can be committed with a reckless state of mind or not? Assault with intent to kill cannot, your honor. The case is cited by the defendant in his brief for that proposition. All are older cases, number one, and involve conduct that the courts, whether it be the South Carolina Supreme Court or the Court of Appeals, have described as the type of reckless conduct that Borden specifically declined to address. That is the wanton recklessness, depraved heart, malice, a foresight type recklessness. The defendant in State v. Smith, which is an 1847 case, shot a person at an open air festival, a person who was riding a horse. He missed the intended victim and instead hit a bystander. The jury declined to find manslaughter and found the defendant guilty of murder in part based on the inference that the conduct was so reckless. They described the conduct as wantonness, wickedness, depraved, and malignant spirit of the act. That's why there was a permissible inference for the jury to find malice in that particular case and convict the defendant of murder instead of manslaughter. In Mouzon, in a Supreme Court 1957 case, in what would typically be a felony DUI today, two young 20-something year old defendants were convicted of murder and accessory after the Supreme Court found reckless and wantonness indicative of a depravity of mind and disregard for human life. The type of extreme recklessness that Borden specifically declined to address. In the third case, it's a family court case. Can I stop you on Mouzon just for a minute? Because I will tell you the language that I thought was, you know, that sort of gave me pause is where they say you don't need any ill will toward the individual who was injured. It's enough that you have sort of a generalized malignant recklessness. And that seemed to be sort of exactly at least in tension with and perhaps in conflict with Borden, which says that you're not using force against the person of another unless you have targeted that person. And Mouzon says, just clear as day, you don't have to actually have targeted the person you have. In the Mouzon case, there was trouble. Your Honor, I'm out of time. May I answer your question? Please. Yeah, keep going. Yeah. In the Mouzon case, Your Honor, like I said, involved a felony DUI. The problem there was there was no evidence of assault with intent to kill. And I think that's the tension in most of the cases cited by or in the three cases cited by the defendant in support of his argument that recklessness can infer malice. There is no intent to kill. That's different in terms of assault with intent to kill. But your whole, I'm sorry, your whole brief, I thought your entire brief was reasoning from, I may have misunderstood, I thought your brief told me the mens rea for assault with intent to kill is the same as the mens rea for murder. And we all know murder is a crime of violence. So go with the, you're the one who brought me to murder. I was looking up AWIC cases, but your brief said, no, no, it's the same as murder. And I said, okay, let me look at the murder cases. But are you now saying it's not the same? No, I'm saying the mens rea is exactly the same. But in Mouzon, in Mouzon, the court found the malice inference based on reckless and wantonness conduct, which indicated a depravity of heart. That is not the type of ordinary recklessness that Borden addresses. Yes. Have I answered your question, Your Honor? I think so. But I want to make sure my colleagues don't have questions. I don't have any questions. Thank you, though. Thank you very much. And I think, Mr. Leonardi, I think you have rebuttal time. Yes. Yes. I mentioned that I wanted to reach this AWIC issue, and I do. But I briefly want to go back and talk about the Kershaw case. Something critical in the Kershaw case that is not present here is that there was a reliable additional Shepard document in Kershaw, the indictment. And in the Kershaw opinion, this court noted that the opinion actually says that the sentencing sheet says that he was convicted of PWID marijuana. Of course, marijuana or PWID does not appear on that sentencing sheet, but the indictment did. And so that's a core difference. And just briefly, I'd like to go over this court's recent decisions regarding these sentencing sheets and point out how unique the circumstances are here. Williams, the most recent case was before the court. There was a sentencing sheet that did not have the generic CDR language. It said PWID crack cocaine. And Furlow, of course, as I mentioned at the top, there was a plea transcript that made perfectly clear what Mr. Furlow had been convicted of. In Marshall, the sentencing sheets indicated PWID and PW.ID within proximity of a school. Those were either handwritten or CDR code. There were two convictions, I believe. In Sultan, the 2018 case, the defendant conceded that the Shepard document showed he was convicted of PWID meth. I think the only case that this court has said these Shepard documents are not sufficient is in Rhodes. And it bears examining because in Rhodes, this court said the Shepard documents are not sufficient because the indictment in Rhodes set forth crimes that were unquestionably within the scope of controlled substance offense and also outside of it. There was distribution and maybe manufacturing, but then also possession language. And so in Rhodes, the court said this Shepard document, legitimate Shepard document, but it's not clear based on this document what specific crime under this statute had been committed. Turning to the, unless there are any questions about that first issue, I'll turn to the assault with intent to kill issue. Can I ask you on assault with intent to kill? Sure. You filed objections to the PSR, you in particular, filed objections to the PSR in the 2004 of your objections. You specifically objected to the use of AWIC as a crime of violence on the ground that the Fourth Circuit has held recklessness as an insufficient mens rea for a crime of violence. And you talk about other cases, cases that are similar and that the Fourth Circuit would not find recklessness sufficient here. But then on appeal, you specifically abandoned that argument. So why shouldn't we consider that a knowing waiver? You clearly knew you had this argument, but you decided not to make it. Yes, and candidly, I had forgotten that I had included this back at that time. That's fine. Nobody cited it in their briefs, which is why I wanted to mention it. It was with respect to a different statute. It looks like it was an ACC. And I understand that the ACC and the queer offender analysis is going to be the same. And so looking at this, at this point, I don't know that I can say that. Certainly, it appears as though that argument was made at the district court and then not raised initially in the initial round of briefing. That appears to be the case. Notwithstanding that, of course, under the court's decision in Manning v. Caldwell for the city of Roanoke, even if the court were to find that an issue was waived, if it meets other requirements, in other words, that there's an adequate basis in the record to address it, it's a legal decision, and that neither party was that issue, then the court could still choose to address it. It certainly is something that litigants will want to know for sure in this district whether assault with intent to kill and other malice offenses would qualify as crimes of violence. My last few seconds here, I just want to make sure that I say that murder is not going away. Malice may be the intent that is required for murder, but it's an enumerated offense, too. So regardless of what the court does with malice on the force clause, murder is still going to be in there. I will also say in the last two seconds that I don't believe the government raised the issue of extreme recklessness and that AWIK was not addressed by the Borden decision. I don't think that footnote in Borden was raised until today. Unless the court has any additional arguments, I mean questions. I hate to do this on the last argument when we're over time, so I'll probably, if we were in person, I would be getting kicked. But to your point about murder isn't going away, I mean if you, in the, I think it's the Tracy case, which is a murder case, it does have some of the same sort of recklessness language in there. And if you're conceding that doesn't apply to murder, how do you concede it does apply here? Because I think that when you look at the enumerated offenses, it's a different analysis than you would have with the force clause, which is what we're dealing with now. I think we need to look at there, you need to look at what the generic definition of murder is. And if it's consistent with what the South Carolina definition is, then murder would remain a crime of violence. Because Borden is only about the force clause and whether you are, can be said to be using force against the person of another. Exactly right, exactly right. It does not address the generic definition of murder. Okay. Thank you. Appreciate it. Thank you. All right. Well, thank you both very much. We appreciate you being here today. We're sorry we're not in person so that we can't thank you in person, but we hope we will see you in Richmond before too much longer. Thank you.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Allison J. Rushing